TERRI BEAL *VS.* BOARD OF SELECTMEN OF HINGHAM.

Plymouth. December 5, 1994. - February 21, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Practice, Civil,* Complaint, Summary judgment. *Anti-Discrimination Law,* Handicap, Employment, Prima facie case, Sex. *Civil Rights,* Availability of remedy, Termination of employment. *Constitutional Law,* Equal protection of laws, Sex discrimination.

A Superior Court judge did not abuse his discretion in allowing a civil defendant's motion to dismiss under Mass. R. Civ. P. 12 (b) (6) and declining to rule on the defendant's motion to dismiss under Mass. R. Civ. P. 4 (j), which the defendant had waived. [538]

In a civil action in which the plaintiff claimed handicap discrimination in violation of G. L. c. 151B, and the Rehabilitation Act of 1973, 29 U.S.C. § 794, the judge correctly granted summary judgment for the defendant employer where the plaintiff failed to demonstrate that she had a reasonable expectation of proving that she was a "qualified handicapped person," that is, that she was capable of performing the essential functions of the job in question, police officer, or that she would be capable of so performing with a reasonable accommodation to her handicap. [539-543]

In a civil action in which the plaintiff claimed gender discrimination in violation of G. L. c. 151B, and 42 U.S.C. § 2000e-2(a) (1), the judge correctly granted summary judgment for the defendant employer where the plaintiff did not demonstrate that she had a reasonable expectation of proving that she would be capable of performing the duties of the job in question, police officer, at an acceptable level. [543-545]

In a civil action in which the plaintiff claimed that her employer had denied her constitutional right to equal protection under the law on the basis of her gender in violation of 42 U.S.C. § 1983, by denying her request for "light duty" and granting it to two other (male) employees, the judge correctly granted summary judgment for the defendant where the plaintiff did not either demonstrate that the employer acted with discriminatory intent or establish a prima facie case of sex discrimination. [545-547]

CIVIL ACTION commenced in the Superior Court Department on December 10, 1992.

The case was heard by *John J. O'Brien*, J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Kevin P. Phillips* for the plaintiff.

*Andrew J. Waugh* (*James A. Toomey* with him) for the defendant.

NOLAN, J. The plaintiff appeals from the entry of summary judgment for the defendant, the board of selectmen of Hingham (board). We transferred the appeal to this court on our own motion, and now affirm.

The following are the relevant facts viewed in the light most favorable to the plaintiff. See *Alioto* v. *Marnell*, 402 Mass. 36, 37 (1988). In 1986, the board appointed the plaintiff to the position of police officer. On July 26, 1988, the plaintiff was injured in a head-on collision while on duty. Following the accident, an ambulance transported the plaintiff to South Shore Hospital where she was treated for multiple injuries. As a result of the accident, the plaintiff suffered from severe injuries to her head, neck, and back. In addition, a neurologist treated the plaintiff for headaches and dizziness resulting from the collision.

While convalescing from her injuries, the plaintiff was unable to continue working as a police officer. The plaintiff, therefore, received compensation benefits pursuant to G. L. c. 41, § 111F (1992 ed.), from July 26, 1988, until June, 1990. In May of 1990, a neurologist, hired by the defendant, examined the plaintiff and concluded that she was not suffering from any neurological disabilities which would prevent her from performing the regular duties of a police officer. Subsequently, the chief of police directed the plaintiff to report for duty by June 26, 1990, and he notified her that her paid injury leave would end on June 26, 1990. The plaintiff, however, refused to report for duty. Instead, she requested an ex parte temporary restraining order to prevent the town from discontinuing her § 111F benefits. A Probate Court

judge granted the temporary restraining order on June 28, 1990. On July 9, 1990, however, the judge denied the plaintiff's request for a preliminary injunction.

On July 20, 1990, the plaintiff applied for accidental disability retirement claiming injuries to her neck, back, and head. When the Hingham retirement board denied the application, the plaintiff appealed. On December 1, 1992, an administrative magistrate of the Division of Administrative Law Appeals concluded that there were no orthopedic specialists on the medical panel that had examined the plaintiff. Deciding that the plaintiff had alleged disabilities which should have been examined by an orthopedic specialist, the administrative magistrate remanded the plaintiff's claim to the retirement board with an order to convene a new medical panel comprised of orthopedic specialists.

Earlier, on October 15, 1991, the plaintiff requested that she be permitted to return to work in a letter to the board. In support of her request to perform "light duty" work, the plaintiff presented two letters from her personal physicians. Although the physicians released the plaintiff to return to her duties as a police officer, they indicated that the plaintiff still suffered from various injuries. The board, however, refused to allow the plaintiff to return to her position as a police officer for two reasons: (1) the board claimed that she had abandoned her position and (2) refused her apparent request for "limited duty." On October 30, 1991, the plaintiff informed the defendant that she wanted to return to "full" duty. In response, the board notified the plaintiff that a hearing would be conducted to determine whether to discipline, suspend, or terminate her. On May 2, 1992, the board discharged the plaintiff from employment as a police officer after conducting a hearing on December 2, 1991, January 8, and May 2, 1992.

On July 30, 1992, the plaintiff filed an employment handicap and sex discrimination claim against the defendant with the Massachusetts Commission Against Discrimination (MCAD) pursuant to G. L. c. 151B, § 4 (1992 ed.). After the MCAD granted the plaintiff's request to remove her

claim to the Superior Court, the plaintiff filed a complaint in the Superior Court on December 10, 1992. The docket reflects return of service on June 26, 1993. Subsequently the board filed a motion to dismiss pursuant to Mass. R. Civ. P. 4 (j), as appearing in 402 Mass. 1401 (1988),[1] and a motion to dismiss pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). In response, the plaintiff filed a motion to enlarge the time for service pursuant to Mass. R. Civ. P. 6 (b) (2), 365 Mass. 747 (1965).[2] The motion judge treated the board's motion to dismiss under rule 12 (b) (6), as a motion for summary judgment pursuant to Mass. R. Civ. P. 56, 365 Mass. 824 (1974), and granted the board's motion.

1. *Failure to consider rule 4 (j) motion.* The plaintiff argues that the motion judge abused his discretion when he granted the board's motion to dismiss without first addressing the issue whether the plaintiff had complied with the time limits for service of the complaint on the board in accordance with rule 4 (j). We disagree.

The board waived any objection to the timeliness of the plaintiff's service of the complaint by failing to object to the court's not addressing the issue. In addition, the plaintiff herself filed a motion to enlarge the time for service pursuant to rule 6 (b) (2), claiming that the failure to serve the complaint on the board in a timely manner was the result of excusable neglect. The plaintiff cannot now claim on appeal that the reason that she had offered previously did not constitute excusable neglect.

---

[1]"If a service of the summons and complaint is not made upon a defendant within 90 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion." Mass. R. Civ. P. 4 (j), as appearing in 402 Mass. 1401 (1988).

[2]"When . . . an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion . . . (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect . . . ." Mass. R. Civ. P. 6 (b) (2), 365 Mass. 747 (1974).

2. *Summary judgment.* The plaintiff argues next that the motion judge erred by granting the board's motion for summary judgment pursuant to rule 56 on all counts of the plaintiff's complaint. We disagree.

"The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law. Mass. R. Civ. P. 56 (c). See *Yakubowicz v. Paramount Pictures Corp.*, 404 Mass. 624, 626 (1989); *Leavitt v. Mizner*, 404 Mass. 81, 88 (1989); *Pederson v. Time, Inc.*, 404 Mass. 14, 16-17 (1989). We may consider any ground supporting the judgment. *Champagne v. Commissioner of Correction*, 395 Mass. 382, 386 (1985)." *Augat, Inc. v. Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). See *Judson v. Essex Agric. & Technical Inst.*, 418 Mass. 159, 162 (1994). "[A] party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in rule 56 (c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." *Kourouvacilis v. General Motors Corp.*, 410 Mass. 706, 716 (1991).

A. *Handicap discrimination.* The plaintiff argues that the motion judge erred in granting the board's motion for summary judgment because she had established a prima facie case of handicap discrimination pursuant to both G. L. c. 151B and the Rehabilitation Act of 1973, 29 U.S.C. § 794 (1988 & Supp. V 1993).[3] There was no error.

General Laws c. 151B, § 4 (16), provides in material part that it shall be unlawful practice "[f]or any employer . . . to . . . refuse to hire, rehire or advance in employment or oth-

---

[3] Because there is "no significant distinction between the term 'qualified handicapped person,' in G. L. c. 151B, and the term 'otherwise qualified individual with handicaps,' in § 504 of the Rehabilitation Act," *Cox v. New England Tel. & Tel. Co.*, 414 Mass. 375, 384 (1993), we have combined our discussion of the terms.

erwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation, unless the employer can demonstrate that the accommodation required to be made to the physical or mental limitations of the person would impose an undue hardship to the employer's business. . . . Physical or mental job qualification requirement with respect to hiring, promotion, demotion or dismissal from employment or any other change in employment status or responsibilities shall be functionally related to the specific job or jobs for which the individual is being considered and shall be consistent with the safe and lawful performance of the job."

In an employment discrimination case pursuant to G. L. c. 151B, the plaintiff has the initial burden of establishing a prima facie case.[4] See *Sarni Original Dry Cleaners, Inc.* v. *Cooke*, 388 Mass. 611, 614-615 (1983); *Smith College* v.

---

[4]"We have previously recognized a distinction between employment discrimination cases in which 'disparate treatment' is alleged, and those involving 'disparate impact.' " *Cox* v. *New England Tel. & Tel. Co.*, 414 Mass. 375, 384 (1993), citing *Smith College* v. *Massachusetts Comm'n Against Discrimination*, 376 Mass. 221, 227 (1978). In disparate treatment cases, unlike disparate impact cases, "proof of the employer's discriminatory motive is critical." *Cox* v. *New England Tel. & Tel. Co.*, *supra* at 385, citing *Brunner* v. *Stone & Webster Eng'g Corp.*, 413 Mass. 698, 699-700 (1992). We have adopted, therefore, "the framework of shifting burdens of persuasion and production of evidence that was articulated in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802 (1973). *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, [371 Mass. 130, 135-139 (1976)]." *Cox* v. *New England Tel. & Tel. Co.*, *supra* at 385. Once the plaintiff establishes a prima facie case of discrimination pursuant to G. L. c. 151B, the burden of production then shifts to the employer "to articulate a legitimate, nondiscriminatory reason for its action, and to 'produce credible evidence to show that the reason or reasons advanced were the real reasons.' *Wheelock College, supra* at 138." *Sarni Original Dry Cleaners, Inc.* v. *Cooke*, 388 Mass. 611, 615 (1983). The burden of proving that the asserted nondiscriminatory reason was a pretext rests on the employee. *Id.* at 614. Thus, establishment of a prima facie case of handicap discrimination creates an inference that the "challenged employment decision was based on impermissible and discriminatory factors in violation of G. L. c. 151B." *Id.* at 615, citing *Smith College* v. *Massachusetts Comm'n Against Discrimination*, 376 Mass. 221, 229 (1978). This is a disparate treatment case. The plaintiff claims that the

*Massachusetts Comm'n Against Discrimination*, 376 Mass. 221, 229 (1978). Although we follow the framework set forth in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802 (1973), we have noted that the facts necessary to establish a prima facie case of discrimination will vary depending on the circumstances of each case. See *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 130, 135 n.5 (1976), citing *McDonnell Douglas Corp.* v. *Green, supra* at 802 n.13. In order to establish a prima facie case of unlawful employment discrimination on the basis of handicap pursuant to G. L. c. 151B, a plaintiff must present some evidence that: (1) she is handicapped; (2) she is a qualified handicapped person and she applied for a position for which the employer was seeking applicants; (3) the employer terminated the plaintiff for the position in spite of her qualifications; (4) after the employer terminated the plaintiff, the position remained open and the employer continued to seek applicants. See *McDonnell Douglas Corp.* v. *Green, supra* at 802; *Wheelock College* v. *Massachusetts Comm'n Against Discrimination, supra* at 135 n.5; P.J. Liacos, Massachusetts Evidence § 5.6.1, at 219 (6th ed. 1994); 9 J. Wigmore, Evidence § 2494 (Chadbourn rev. ed. 1981). Thus, because of the developed summary judgment record in this case, the plaintiff must establish that she has a reasonable expectation of proving each element of a prima facie case of handicap discrimination. See *Kourouvacilis* v. *General Motors Corp., supra* at 716.

We shall assume, without deciding, that when viewing the facts in the light most favorable to the plaintiff, the plaintiff's injuries rendered her a handicapped person. Nevertheless, we think that the plaintiff has failed to demonstrate that she has a reasonable expectation of proving that she is a qualified handicapped person within the meaning of either G. L. c. 151B or § 504 of the Rehabilitation Act. A "qualified handicapped person" is one who "is capable of performing the es-

---

defendant has treated her differently from other employees and prospective employees because of her sex and her alleged handicap.

sential functions of a particular job, or who would be capable of performing the essential functions of a particular job with reasonable accommodation to his handicap." G. L. c. 151B, § 1 (16). See *Cox* v. *New England Tel. & Tel. Co.*, 414 Mass. 375, 381-384 (1993). An employer, however, may refuse to accommodate any handicap that necessitates the substantial modification of employment standards. See *Southeastern Community College* v. *Davis*, 442 U.S. 397, 410 (1979); *Wynne* v. *Tufts Univ. Sch. of Medicine*, 932 F.2d 19, 25 (1st Cir. 1991), on remand, 976 F.2d 791 (1992), cert. denied, 507 U.S. 1030 (1993), citing *School Bd. of Nassau County* v. *Arline*, 480 U.S. 273, 287-288 n.17 (1987).

We think that the plaintiff has failed to demonstrate that she is capable of performing the essential functions required of a police officer, even with a reasonable accommodation to her handicap. One of the essential duties of a police officer is to protect the public at large. The character of the plaintiff's injuries prevents her from fulfilling this fundamental duty. One of the plaintiff's own physicians stated that the plaintiff suffers from chronic fatigue, sleep disorder, and that she is at risk for blackouts in high-stress situations. It is uncontested that the plaintiff suffered from a long-term disability, as another one of her physicians noted when he had recommended to the plaintiff that she not resume her duties as a police officer in her "injured state." Thus, the plaintiff's susceptibility to blackouts in high-stress situations would place the public at risk if she were to resume serving as a police officer.

In addition, the plaintiff's capacity for fulfilling the duties of a police officer would not be enhanced by any reasonable accommodation. Assuming, arguendo, that "light duty" at a "desk job" or as a dispatcher constitutes a reasonable accommodation, the plaintiff's injuries still would preclude her from performing the essential duties of a police officer. A police officer who works at a desk must be capable of responding in a professional manner to various crises that could occur in the station house. In addition, a police dispatcher must remain clear headed and calm in emergency situations. The plaintiff's susceptibility to blackouts in stressful situations,

however, not only would make her unreliable, but also would endanger the public. Because police officers are responsible for public safety, and the plaintiff's handicap severely compromises her capability to ensure the general safety of the public, we think that there are no reasonable accommodations that would enable the plaintiff to perform the essential functions of a police officer. The plaintiff, therefore, has no reasonable expectation of demonstrating that she is a qualified handicapped person under either G. L. c. 151B or § 504 of the Rehabilitation Act.

We note also that the plaintiff herself claimed that she was unable physically to return to her position as a police officer when she filed for disability retirement and social security benefits. In addition, when the defendant ordered the plaintiff to return to her duties as a police officer in June, 1990, the plaintiff refused, requesting instead that the defendant assign her to "light duty." Furthermore, the plaintiff stated that she regarded herself as permanently and totally disabled at a disciplinary hearing conducted by the board. Having claimed previously that she was unable to perform the duties of a police officer, the plaintiff cannot now successfully claim that she is capable of performing the essential functions of the job. See *August* v. *Offices Unlimited, Inc.*, 981 F.2d 576, 584 (1st Cir. 1992) (concluding that plaintiff cannot establish that he is qualified handicapped person after claiming that he was totally disabled). Because we have concluded that the plaintiff has no reasonable expectation of demonstrating that she is a qualified handicapped person, we need not further address the issue whether the plaintiff's request for "light duty" would be a reasonable accommodation, nor need we further address whether the plaintiff has satisfied the other required elements of a prima facie case.

B. *Gender discrimination.* The plaintiff argues next that the motion judge erred in granting the defendant's motion for summary judgment on the plaintiff's gender discrimina-

tion claims pursuant to G. L. c. 151B (1992 ed.) and 42 U.S.C. § 2000e-2(a)(1) (1988).[5] There was no error.

Once again, we note that the plaintiff has the initial burden of establishing a prima facie case of gender discrimination pursuant to G. L. c. 151B. See *Sarni Original Dry Cleaners, Inc.* v. *Cooke, supra* at 614-615; *Smith College* v. *Massachusetts Comm'n Against Discrimination, supra* at 229. In order to establish a prima facie case of gender discrimination resulting in the termination of employment, the plaintiff must establish that (1) she is a member of a protected group; (2) she was capable of performing the job at an acceptable level; (3) she was terminated; and (4) her employer sought a replacement with similar qualifications. See *White* v. *University of Mass. at Boston,* 410 Mass. 553, 557 (1991). See also *Wheelock College* v. *Massachusetts Comm'n Against Discrimination, supra* at 135 n.5, citing *McDonnell Douglas Corp.* v. *Green, supra* at 802 n.13 (stating that facts necessary to establish prima facie case of discrimination will vary depending on situation). Thus, to avoid a grant of summary judgment against her on the G. L. c. 151B claim, the plaintiff must establish that she has a reasonable expectation of proving each element of a prima facie case of gender discrimination. See *Kourouvacilis* v. *General Motors Corp., supra* at 716.

As the only woman police officer on a police force at the time of her employment comprised of more than thirty individuals, we shall assume without deciding, that the plaintiff is a member of a protected group. In addition, it is undisputed that the board terminated the plaintiff from her position as a police officer. Nevertheless, it is clear, in light of

---

[5]Because "[t]he analysis of a [gender] discrimination claim is essentially the same under the State and Federal statutes," *White* v. *University of Mass. at Boston,* 410 Mass. 553, 557 (1991), we combine our discussion of both the Federal and State claims. Title 42 U.S.C. § 2000e-2 provides in part: "(a) It shall be an unlawful employment practice for an employer — (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

our discussion in part A above, that the plaintiff has no reasonable expectation of demonstrating that she would be capable of performing her duties as a police officer at an acceptable level. We decline to address, therefore, whether the plaintiff established the remaining elements of the prima facie case of gender discrimination. As a result, we are content that the plaintiff has no reasonable expectation of demonstrating that she would be capable of performing her duties as a police officer at an acceptable level in accordance with 42 U.S.C. § 2000e-2 and G. L. c. 151B.[6]

3. *Equal protection claim.* The plaintiff argues that, because the board accommodated the "handicaps" of two male police officers by giving them "light duty" but denied her request for a similar reasonable accommodation pursuant to G. L. c. 151B, the board denied the plaintiff her constitutional right to equal protection under the law on the basis of her sex in violation of 42 U.S.C. § 1983 (1988).[7] The plaintiff claims, therefore, that the motion judge erred in granting the board's motion for summary judgment. We disagree.

Discrimination on the basis of sex violates the equal protection clause of the Fourteenth Amendment to the United States Constitution if the discrimination does not "serve important governmental objectives" and is not "substantially related to achievement of those objectives." *Davis* v. *Passman*, 442 U.S. 228, 234-235 (1979). See *Lipsett* v. *University of P.R.*, 864 F.2d 881, 896 (1st Cir. 1988). "To prove a

---

[6]Because we conclude that the plaintiff had no reasonable expectation of establishing a prima facie case of employment discrimination pursuant to G. L. c. 151B, the defendant did not have to articulate a nondiscriminatory reason for its decision to terminate the plaintiff. See *Sarni Original Dry Cleaners, Inc.* v. *Cooke, supra* at 614-615 (stating that defendant's burden of articulating a legitimate, nondiscriminatory reason for its action arises only after the plaintiff has established a prima facie case). As a result, we reject the plaintiff's sixth argument that the motion judge erred by granting the defendant's motion for summary judgment because the defendant failed to offer facts to rebut the plaintiff's argument.

[7]Title 42 U.S.C. § 1983 provides for a civil action, including damages, for the deprivation of rights by any "person" acting under the color of State law, custom, or usage. See *Lipsett* v. *University of P.R.*, 864 F.2d 881, 885 n.4 (1st Cir. 1988).

violation of the equal protection clause, a plaintiff must show that the defendant acted with discriminatory intent." *Id.*, citing *Washington* v. *Davis*, 426 U.S. 229, 239-242 (1976). "Because a showing of discriminatory intent is also necessary to make out a claim of disparate treatment under Title VII," the analytical framework for proving discriminatory treatment under Title VII applies equally to constitutional and Title VII claims. *Lipsett* v. *University of P.R.*, *supra* at 896. *White* v. *Vathally*, 732 F.2d 1037, 1039 (1st Cir.), cert. denied, 469 U.S. 933 (1984). See *Lewis* v. *University of Pittsburgh*, 725 F.2d 910, 915 n.5 (3d Cir. 1983) (holding that claims brought under §§ 1981 and 1983 require the same elements of proof as a Title VII action), cert. denied, 469 U.S. 892 (1984). Thus, to prove an equal protection claim filed pursuant to 42 U.S.C. § 1983, where direct evidence of a discriminatory intent is lacking, a plaintiff may establish a prima facie case of sex discrimination by presenting some evidence that: (1) she is a member of a protected class; (2) she was capable of performing the job at a level that met the employer's reasonable expectations; (3) she was terminated; (4) the employer sought someone to perform the same work after she left. See *Lipsett* v. *University of P.R.*, *supra* at 899.

We think that the four elements necessary to establish a prima facie case for an equal protection claim filed pursuant to § 1983 are substantially the same as the requirements necessary to establish an employment discrimination claim pursuant to G. L. c. 151B. Based upon our discussion in part 2 (A) above, we think that the plaintiff has no reasonable expectation of demonstrating that she was capable of performing the duties of a police officer at a level that met the defendant's reasonable expectations. We also note that the department had no official light duty policy. We conclude, therefore, that the plaintiff has failed to establish a prima facie case of sex discrimination in violation of the equal protection clause in her claim pursuant to § 1983. As a result,

the motion judge did not err in granting the defendant's motion for summary judgment.

*Judgment affirmed.*