# Harold Cohen *vs.* State Street Bank and Trust Company.

No. 07-P-115.

Suffolk. December 6, 2007. - September 15, 2008.

Present: Cohen, Trainor, & Grainger, JJ.

*Investment Advisor. Fiduciary. Limitations, Statute of. Contract,* Performance and breach, Implied covenant of good faith and fair dealing. *Uniform Securities Act.*

In a civil action, the judge properly dismissed, as time barred, the plaintiff investor's claim that the defendant institutional investment manager had committed a breach of its fiduciary duty with regard to accounts on which the plaintiff had sustained losses, where the plaintiff had actual knowledge (from account statements and from a letter from the defendant) more than three years before bringing suit that the accounts were suffering losses. [630-632] Trainor, J., dissenting.

In a civil action, the judge properly granted summary judgment in favor of the defendant institutional investment manager on the plaintiff investor's claim of breach of contract arising out of losses that the plaintiff had sustained on certain accounts, where, although the complaint stated a cause of action distinct from the plaintiff's breach of fiduciary duty claim (i.e., that the defendant failed to invest the plaintiff's funds in accordance with the objective the plaintiff had selected), the plaintiff failed to support it with any assertion of any evidence that demonstrated a genuine dispute of material fact. [632-634] Trainor, J., concurring in part and dissenting in part.

The judge in a civil action properly granted summary judgment in favor of the defendant institutional investment manager on the plaintiff investor's claim of breach of the covenant of good faith and fair dealing, where no genuine dispute existed that the defendant had performed its contractual obligations. [634] Trainor, J., dissenting.

The judge in a civil action properly dismissed a claim alleging a violation of the Uniform Securities Act, where the defendant institutional investment manager was not a "seller" within the meaning of G. L. c. 110A, § 410(*a*), and where the record was devoid of any evidence that the defendant made any untrue statements or omitted any material facts. [635]

Civil action commenced in the Superior Court Department on March 31, 2004.

The case was heard by *Ralph D. Gants*, J., on a motion for summary judgment.

*Jonathan Kord Lagemann* (*Grover S. Parnell, Jr.*, with him) for the plaintiff.

*Brenda R. Sharton* for the defendant.

GRAINGER, J. The plaintiff, Harold Cohen, seeks damages from his institutional investment manager, State Street Bank and Trust Company (State Street), for losses of approximately $393,000 sustained by him in 2000 and 2001. He appeals from a summary judgment entered in favor of State Street on all counts.[1]

*Background.* The following facts are undisputed. In 1997, Cohen opened three different discretionary accounts at State Street including the one here at issue, designated as the "Harold Cohen Simplified Profit Sharing Plan" (account or Plan).[2] The parties entered into a written "Investment Manager Agreement" (agreement). The agreement set forth State Street's investment duties, in pertinent part, as follows:

> "[State Street] will invest all Plan assets subject to this Agreement in accordance with the investment objectives as selected in the statement attached to this Agreement, or as provided from time to time by [Cohen]. It may, at its discretion, utilize various pooled funds for employee benefit funds where appropriate to achieve the investment objectives. *[State Street] shall be responsible only for managing the Account in accordance with the investment objectives selected in the attached statement (which may be changed from time to time), and shall have no responsibility or liability for the selection of such objectives* (or for determining that such objectives are appropriate for the Plan) or for the management of any other plan assets" (emphasis supplied).

Although the agreement made reference to an attached state-

---

[1]The complaint alleged breach of contract, breach of the implied covenant of good faith and fair dealing, a violation of the Uniform Securities Act, G. L. c. 110A, and three counts of breach of fiduciary duty.

[2]The others were titled the "Charitable Remainder Unit Trust" and the "Harold and Janice Cohen Charitable Foundation." The complaint asserted no claims as to these two accounts.

ment of investment objectives, no statement was attached. However, shortly thereafter Cohen began receiving monthly account statements from State Street which identified his "investment objective" as "growth." At the time the agreement was signed the growth asset allocation model was the riskiest and most speculative model offered by State Street.[3]

In December, 1999, State Street controlled approximately $9 million of Cohen's assets. The account itself contained $4,116,095 of the total, of which 70.7 per cent was invested in securities of predominantly large domestic corporations. Shortly thereafter State Street established two subaccounts within the account: the "special equity" subaccount and the "international" subaccount. To fund the subaccounts State Street liquidated a total of $800,000 from the more than $4 million in the account and used those funds to purchase various securities for the new subaccounts valued at $400,000 each. From their inception in early 2000, Cohen received separate monthly statements for both subaccounts which reflected the fact that the subaccounts had been opened, listed the specific investments, and reported the monthly gain or loss incurred.

It is undisputed that by mid-2000 Cohen had received and reviewed monthly statements for the subaccounts, had spoken with his account manager, Lawrence Foster, about the subaccounts, and had recognized that he had suffered losses.[4] After receiving a statement for November, 2000, indicating a particularly low balance, Cohen contacted Foster to discuss losses in the subaccounts. In response, Foster sent Cohen a letter, dated December 14, 2000, which included the following language:

> "Perhaps a good place to begin is to confirm your investment objectives and time horizon for the money you have here at State Street. It has been my impression that you are comfortable taking a higher degree of risk in order to achieve higher returns. I arrived at this conclusion based on your comments regarding the trading activity in your

---

[3]The other models were "income" and "growth and income." Sometime thereafter, at least by 2000, State Street added a "maximum growth" asset allocation model which was more speculative than the growth model.

[4]Many of Cohen's copies of the monthly statements were covered in notes, scribbles, and calculations in his own pen.

accounts here. Given your age and health I have assumed a time horizon of no less than 5 years. If I am mistaken, please correct me."

Cohen admitted at his deposition that he never responded to this letter from Foster, or made any attempt to correct Foster's understanding of his investment objectives or his level of risk tolerance. At Cohen's direction, State Street liquidated both subaccounts about two years after their inception. By that time they had sustained losses, as stated above, slightly in excess of $393,000. We refer to additional facts as they are pertinent to the issues.

*Discussion.* Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 553 (1976). The moving party, in this case State Street, bears the burden of proving "there is no genuine issue of material fact on every relevant issue," even if it would not have that burden at trial. *Pederson* v. *Time, Inc.*, 404 Mass. 14, 17 (1989). Once the moving party satisfies its burden, the burden shifts to the nonmoving party to show with admissible evidence a dispute of material fact. *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 711 (1991).

1. *Breach of fiduciary duty.* The motion judge found that Cohen's breach of fiduciary duty claims were time barred by the three-year statute of limitations applicable to such claims. See G. L. c. 260, § 2A. The complaint was filed on March 31, 2004; we agree with the judge that Cohen's cause of action accrued more than three years before that date, or earlier than March 31, 2001.

The subaccounts were opened in early 2000. It is undisputed that Cohen knew about substantial losses in the subaccounts within six months of their creation, and that he had been informed by Foster in December of that same year that State Street believed, and was acting on the belief, that Cohen was "comfortable taking a higher degree of risk" with the money he had at State Street. Even without this additional confirmation con-

tained in Foster's letter, Cohen knew well before March 31, 2001, from the monthly statements he began receiving early in 2000, that he was being harmed and that the harm was the result of State Street's investment strategy on his behalf. See *Doe* v. *Harbor Schs., Inc.*, 446 Mass. 245, 256 (2006) (cause of action accrues when plaintiff knows sufficient facts to make causative link between fiduciary's conduct and beneficiary's injury).

The dissent interprets a conventional statement of opinion in Foster's letter that "[l]ong term results should be fine" despite short-term volatility, in effect, as evidence of fraudulent concealment which tolled the statute of limitations pursuant to G. L. c. 260, § 12 (tolling limitations period for time during which "a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it"). Cohen neither alleged nor proffered any evidence, including the Foster letter, to satisfy his burden that he did not actually know of his losses resulting from State Street's investments in the subaccounts. See *id.* at 256-257. Foster's statement was a prediction about the future and, as such, cannot be the basis for a claim of fraudulent concealment of past or present conditions. See *Stolzoff* v. *Waste Sys. Intl., Inc.*, 58 Mass. App. Ct. 747, 759 (2003). We are all the more unpersuaded by the dissent's approach in view of the lack of any evidence in the record that the statement (which was not addressed only to the subaccounts or even only to the Profit Sharing Plan but referred to "the money you have here at State Street") was shown to be inaccurate, i.e., that long-term results for growth investments have been anything other than as Foster forecast.

*Patsos* v. *First Albany Corp.*, 433 Mass. 323 (2001), and other cases cited by the dissent, discuss the effect of a defendant's withholding of material information, wholly absent here,[5] on the statute of limitations. In this case, the record establishes that Cohen had actual knowledge of the subaccounts within

---

[5]Unlike the dissent, we do not perceive fraudulent concealment in Foster's statement that "[p]ortfolio theory and historical asset class returns suggest" that adding other diversified investments to "large cap US equities can provide higher returns at the same level of risk or similar returns at a reduced level of risk."

thirty days of the date they were opened. Thereafter, through his monthly statements, Cohen had actual knowledge of the investment objective, the specific securities contained in the subaccounts, and his losses as they were incurred. He also was given explicit notice reconfirming the alleged risk level no later than December, 2000, having been told that State Street was operating on the understanding that he was "comfortable taking a higher degree of risk in order to achieve higher returns." In short, this is not a case where it might reasonably be concluded by a trier of fact that a fiduciary failed adequately to disclose the facts that would give rise to knowledge of a cause of action. Contrast *id.* at 337-338. See generally *Demoulas* v. *Demoulas Super Mkts., Inc.,* 424 Mass. 501, 519-520 (1997), and cases cited. This is equally so however one might construe the theory of breach of fiduciary duty alleged by Cohen. See *Doe* v. *Harbor Schs., Inc.,* 446 Mass. at 256-257 (actual knowledge of injury suffered at fiduciary's hands triggers statute of limitations whether fiduciary breaches trust by fraudulent misrepresentation or by repudiating trust).

Cohen's assertion that his cause of action did not accrue until he retained an expert, and received a report from his expert regarding the cause of his losses, is unavailing. With Cohen's theory, plaintiffs would have unilateral control over the accrual of their cause of action by deciding when to hire an expert or order a report[6]; the judge properly rejected this theory.[7]

2. *Breach of contract.* The judge granted summary judgment in favor of State Street with respect to Cohen's breach of con-

---

[6]Equally apt in this context are the observations of the Supreme Judicial Court in *Doe* v. *Harbor Schs., Inc., supra,* holding that a fiduciary claim accrues when the plaintiff has knowledge of actual harm and not knowledge of an actionable claim. Were the rule otherwise, "[f]iduciaries would become perpetual defendants-in-waiting, and one would expect as a result that fewer individuals would elect to undertake a fiduciary's weighty responsibilities." *Id.* at 256.

[7]Although Cohen's argument that the doctrine of continuing representation should be expanded to apply to investment advisors does not appear to have been raised below, see *Carey* v. *New England Organ Bank,* 446 Mass. 270, 285 (2006), we note that its application would not help Cohen as he had sufficient knowledge to trigger the statute of limitations more than three years before he filed his complaint. See *Lyons* v. *Nutt,* 436 Mass. 244, 249-250 (2002).

tract claim, normally subject to a six-year statute of limitations, G. L. c. 260, § 2, finding it was also time barred because it was "nothing more than a breach of fiduciary claim dressed as a breach of contract claim." We uphold the grant of summary judgment, albeit on different grounds. See *Audette* v. *Commonwealth*, 63 Mass. App. Ct. 727, 728 (2005).

The parties entered into a contract, imposing rights and duties on both sides that existed independently of any fiduciary relationship arguably imposed by law on investment advisors. Cohen's assertion of breach of contract, in essence, alleges that State Street failed to invest his funds in accordance with the objective he had selected. It thus speaks squarely to a contractual duty which is not based on a theory of fiduciary obligation. A course of conduct may give rise to more than one cause of action. See, e.g., *Capital Site Mgmt. Assocs.* v. *Inland Underwriters Ins. Agency, Ltd.*, 61 Mass. App. Ct. 14, 17 n.6 (2004).

The problem with the contract claim here is not that it fails to state a cause of action distinct from a breach of fiduciary duty, but that Cohen has failed to support it with any assertion of material fact.

The governing characteristic of the agreement for our purposes is the clear and unambiguous term providing that State Street's responsibility is to manage the account *as a whole* in accordance with the investment objectives selected by Cohen; it specifically disclaims any obligation by State Street related to the selection of those objectives. Simply stated, Cohen was to pick his objective, and State Street was to invest accordingly. State Street has demonstrated the absence of any genuine dispute of material fact concerning Cohen's agreement with the objective,[8] and the selection throughout of investments by State Street in accordance with the objective.

State Street having satisfied its burden, we consider whether Cohen has produced evidence that demonstrates a genuine dispute of material fact. It is salient that Cohen never alleged, much less proffered evidence of, any losses except in the subaccounts. By contrast, his agreement with State Street related to

---

[8]It is undisputed not only that Cohen agreed with the stated objective but also that he failed to change it when State Street solicited his reconfirmation in Foster's letter of December 14, 2000.

the account as a whole.[9] Cohen has alleged losses, resulting from investment at too high a risk, that are nine and one-half per cent of the account. This allegation, even if proved, fails to establish that the account as a whole was not diversified in a manner consistent with the objectives to which he agreed.[10] Alternatively stated, Cohen offers no basis to transform State Street's acknowledgment[11] of an obligation to pursue a growth investment objective with respect to the account — that is an investment approach to a multi-million dollar portfolio — into an obligation that every specific stock be a so-called "growth" stock.

3. *Covenant of good faith and fair dealing.* The covenant of good faith and fair dealing may not "be invoked to create rights and duties not otherwise provided for in the existing contractual relationship." *Uno Restaurants, Inc.* v. *Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004). Inasmuch as there is no genuine dispute that State Street has performed its contractual obligations, Cohen's claim for breach of the covenant of good faith and fair dealing fails as well. *Ibid.*

In addition, we note that the covenant "concerns the manner of performance." *Ibid.* Foster's letter, specifically reaffirming the level of risk at which Cohen chose to invest, and Cohen's deposition testimony, conceding that although he was well aware of the losses "[he] procrastinated probably hoping that [State Street] knew something that [Cohen] didn't know," establish as well that there is also no genuine dispute on any fact material to a claim for violation of the implied covenant of good faith and fair dealing. Summary judgment was properly granted on this count as well.

---

[9] This also points to an additional defect in Cohen's assertion of a breach of fiduciary duty; the small amount of loss, considered in the context of the full relationship between the parties, is difficult to characterize as a breach.

[10] Despite references only to growth in all communications, Cohen now argues State Street failed to comply with his specified strategy of "safe growth." He has failed to provide any evidence to show that such an investment strategy existed, that he told State Street to pursue it, what such a strategy would entail, or how State Street failed to comply with it.

[11] Even this characterization is generous to Cohen at the expense of reality. Foster's letter, fairly read, was asking a question of Cohen ("It has been my impression . . . [i]f I am mistaken, please correct me") — a question which went unanswered.

4. *Uniform Securities Act.* The motion judge dismissed Cohen's count alleging a violation of the Uniform Securities Act (Act), because State Street was not a "seller" within the meaning of G. L. c. 110A, § 410(*a*), and even if it were, Cohen presented no evidence that State Street made any untrue statements or omitted any material fact. We agree.

The judge properly refused to apply the Act to State Street, as it applies only to "[a] person who successfully solicits the purchase motivated at least in part by a desire to serve his own financial interests or those of the securities owner." *Stolzoff* v. *Waste Sys. Intl., Inc.*, 58 Mass. App. Ct. at 766 n.21, quoting from *Adams* v. *Hyannis Harborview, Inc.*, 838 F. Supp. 676, 686 (D. Mass. 1993), aff'd in part sub nom. *Adams* v. *Zimmerman*, 73 F.3d 1164 (1st Cir. 1996). Cohen failed to allege, much less provide any evidence, that State Street had any financial interest underlying the specific investment selections of which he complains.[12,13] Contrast *Adams* v. *Hyannis Harborview, Inc.*, *supra* at 687 (sales agent was "seller" where she received commission on each unit sold).

Finally, although not necessary for our determination of this issue, we note that the record is entirely devoid of any evidence that State Street made any untrue statements or omitted any material facts necessary to impose liability under the Act.

*Judgment affirmed.*

---

[12]For example, Cohen failed to allege or provide evidence that State Street based its fees on the number of transactions, as opposed to a commonly employed investment management fee structure based on the value of the account.

[13]Cohen also argues that even if State Street is not itself a "seller," it "directly or indirectly controls a seller liable under [§ 410](*a*)," G. L. c. 110A, § 410(*b*), inserted by St. 1972, c. 694, § 1, namely the entity Cohen characterizes (without evidentiary support) as State Street's wholly owned broker-dealer subsidiary, State Street Brokerage Services, Inc. (SSBSI). Cohen argues that State Street is thus liable under § 410(*b*) of the Act. However, the only possible support in the record for this claim is language in the "Investment Agency Agreement for Trustees," executed by the parties, which states that "SSBSI[] *may* be used to effect purchases and sales of securities for the account" (emphasis supplied). Moreover, and leaving aside whether SSBSI is a necessary party to such a suit, Cohen has failed to allege, much less present, evidence that would support attaching liability to SSBSI under § 410(*a*).

TRAINOR, J. (concurring in part and dissenting in part). I respectfully dissent from that portion of the majority opinion that affirms the grant of summary judgment on the plaintiff Harold Cohen's claims of breach of fiduciary duty, breach of contract, and breach of the implied covenant of good faith and fair dealing. It is important to remember that we are reviewing the allowance of a motion for summary judgment, where we, and the motion judge, can rely on facts that are undisputed, and disputed facts must be reviewed in the light most favorable to the nonmoving party (Cohen). See *Nelson* v. *Salem State College*, 446 Mass. 525, 535 (2006). See generally *Beal* v. *Selectmen of Hingham*, 419 Mass. 535, 539 (1995).

First, the essence of this appeal is the fact that we are dealing with the obligations and consequences of a fiduciary relationship that existed between Cohen and State Street Bank and Trust Company (State Street). State Street was a fiduciary, contractually as well as by virtue of its complete discretion in choosing the investments in Cohen's accounts. The "Investment Manager Agreement" (agreement) stated that "[b]y its agreement to act as Investment Manager, [State Street] acknowledges that it is a fiduciary of the [Harold Cohen Simplified Profit Sharing Plan (profit sharing account)]." The motion judge acknowledged this relationship in his memorandum of decision.

1. *Breach of fiduciary duties.* For the purposes of summary judgment, State Street argues that Cohen's claims of breach of fiduciary duty are barred by the three-year statute of limitations. The majority has concluded that the limitations period began to run when Cohen received monthly account statements in 2000. According to the majority, the account statements notified Cohen that he was being harmed and the harm was the result of State Street's investment strategy. The majority also suggests that State Street's letter provided additional confirmation of this notice. In my opinion, neither the letter nor the account statements provided the notice necessary to trigger the statute of limitations.

Generally, under the "discovery rule," an action accrues when the injured party discovers or should reasonably have discovered the factual basis for the cause of action. *Bowen* v. *Eli Lilly & Co.*, 408 Mass. 204, 205-206 (1990). The statute of

limitations would therefore be tolled under the discovery rule when the factual basis for the cause of action is "inherently unknowable" at the time of the injury. *Id.* at 206. See *Tagliente* v. *Himmer*, 949 F.2d 1, 4 (1st Cir. 1991).

In the alternative, pursuant to G. L. c. 260, § 12, the doctrine of fraudulent concealment states that, "[i]f a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action." The doctrine has been interpreted to mean that "the statute of limitations may be tolled under G. L. c. 260, § 12, if the wrongdoer *either* 'concealed the existence of a cause of action through some affirmative act done with intent to deceive' *or breached a fiduciary duty of full disclosure*" (emphases supplied). *Puritan Med. Center, Inc.* v. *Cashman*, 413 Mass. 167, 175 (1992), quoting from *Frank Cooke, Inc.* v. *Hurwitz*, 10 Mass. App. Ct. 99, 108 (1980). See *Patsos* v. *First Albany Corp.*, 433 Mass. 323, 329 n.11 (2001) (statute of limitations tolled until plaintiff receives "actual knowledge" of facts giving rise to cause of action if wrongdoer is fiduciary and has breached duty of disclosure). See also *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. 501, 519 (1997) (same).

For the purpose of tolling the statute of limitations, the majority appears to base its analysis on the "discovery rule," when this case, because it involves a fiduciary relationship, should be analyzed under either the repudiation doctrine or the doctrine of fraudulent concealment (or both). "We have recognized that a breach of fiduciary duty may partake of both kinds of wrongful conduct — concealment and repudiation — and that the *actual knowledge standard* applies to both to toll the statute of limitations" (emphasis supplied). *Doe* v. *Harbor Schs., Inc.*, 446 Mass. 245, 257 n.14 (2006). In any event, actual knowledge is required that injury has been suffered at the hands of the fiduciary, as opposed to "knowledge of the consequences of that injury (i.e., a legal claim against the fiduciary)." *Id.* at 256-257. Moreover, "[m]ere suspicion or mere knowledge that the fiduciary has acted improperly does not amount to actual knowledge that the plaintiff has suffered harm." *Id.* at 255.

The majority also misconstrues the application, here, of the doctrine of fraudulent concealment by, in effect, requiring a showing of some positive steps to actually conceal. The doctrine does not require such a showing in the presence of a fiduciary relationship. It is specifically not necessary to show positive steps of active concealment because:

> "Only when the beneficiary's harm at the fiduciary's hands has 'come home' to the beneficiary . . . does the limitations clock begin to run. In this manner, the actual knowledge standard recognizes the dependent status of the beneficiary vis-à-vis the fiduciary, and protects the beneficiary's legitimate expectation that the fiduciary will act with the utmost probity in all matters concerning the relationship."

*Doe* v. *Harbor Schs., Inc.,* 63 Mass. App. Ct. 337, 449-450 (2005) (citation omitted).

Here, the fiduciary never repudiated the relationship with the beneficiary. The essence of Cohen's argument is that State Street breached its fiduciary duty of disclosure and that he only had "actual knowledge" of the inappropriate nature of the investments in the newly created subaccounts when he received his expert's analysis.[1] *Patsos* v. *First Albany Corp.,* 433 Mass. at 329 n.11.

The majority has concluded that a letter from State Street put Cohen on notice that he was being harmed by State Street's investment strategy because it included the observation that "[i]t has been my impression that you are comfortable taking a higher degree of risk in order to achieve higher returns." Actually, that observation is not made in regard to the subaccounts at issue here. The statement appears to be made in reference to Cohen's principal accounts,[2] which are comprised of more stable and conservative investments. When the letter does refer

---

[1]It is not necessary for Cohen to specifically plead fraudulent concealment. This is not a common-law cause of action and general pleading rules would apply. Cohen certainly pleaded facts sufficient to prove fraudulent concealment. At a minimum, if the motion judge was concerned with this part of the pleadings, Cohen should have been given leave to amend them in light of his having specifically pleaded breach of fiduciary duty.

[2]Although Cohen opened three accounts at State Street, Cohen's claims

to the subaccounts, they are described as entailing equal or lesser risk than the principal accounts. The letter states:

> "Portfolio theory and historical asset class returns suggest that adding *these asset classes* [the subaccounts] to a portfolio of large cap US equities can *provide higher returns at the same level of risk or similar returns at a reduced level of risk*" (emphases supplied).

Far from disclosing that the risk level of the subaccounts was higher than that of the principal accounts, the letter tells Cohen something quite the opposite. In addition, the letter concludes by advising Cohen that:

> "I will admit that our timing could have been much better, but *I do not regret investing your money in either category [the two subaccounts]. Long term results should be fine*" (emphasis supplied).

The majority, as did the motion judge, assumes that Cohen should have known that he was being harmed by State Street when the subaccounts started to lose value and when State Street sent him a letter to reassure him. In the context of a fiduciary relationship and the vagaries of market investing however, the temporary loss of market value in the subaccounts, alone, would not have represented actual knowledge of the breach of State Street's fiduciary duty of full disclosure and its resulting harm. Further, contrary to the majority's conclusion that the letter put Cohen on notice that he had been harmed, it actually assured him that "long term results should be fine."

Cohen provided unrefuted expert testimony in the summary judgment record that the investments in the subaccounts were three and four times, respectively, more risky than the investments in his principal profit sharing account. As the basis of his fiduciary duty claims, this fact was never disclosed to him and should have been under State Street's duty as a fiduciary. See *Geller* v. *Allied-Lyons PLC*, 42 Mass. App. Ct. 120, 125-128

pertain only to the subaccounts. While the Harold Cohen Simplified Profit Sharing Plan (profit sharing account) is implicated, Cohen's complaint makes no claims regarding this account.

(1997) (requirement of fiduciary to make full, fair, and contemporaneous disclosure of material facts).

The letter from State Street informed Cohen that the investments in the subaccounts were of equal or less risk than the principal accounts. "[A] beneficiary is entitled to approach without skepticism a fiduciary's representation that the fiduciary is investing the beneficiary's money on the beneficiary's behalf and is not required to ascertain the absence of foul play." *Doe v. Harbor Schs., Inc.*, 446 Mass. at 256 n.13. Cohen could not have known that the letter misrepresented the nature of these investments until he hired an independent expert to analyze the investments. His actual knowledge of the facts giving rise to his claims (breaches of fiduciary duty) occurred when his expert reported to him, which was well within the three- year statute of limitations.

The majority attempts to equate the subaccounts with the principal profit sharing account. This mischaracterizes the claims brought by Cohen, the nature of the subaccounts, and the undisputed facts of this case.[3] State Street's letter described the subaccounts as "separately managed small/mid and international portfolios." Cohen received separate monthly statements for the principal profit sharing account, the special equity subaccount, and the international subaccount. The statements listed the investment objective as "growth" for each of these separately

---

[3]State Street created the subaccounts by withdrawing assets from the principal profit sharing account. The subaccounts, which were established without full disclosure by State Street, lost almost fifty per cent of their value before they were closed by Cohen.

The majority's discussion and calculation of Cohen's losses, *ante* at 633-634 & n.9, in my opinion, misconstrues the claims before us and, as a result, improperly calculates Cohen's alleged losses. Cohen's claims pertain only to the subaccounts. As only the value of the subaccounts is at issue, Cohen's allegations pertain to losses in the subaccounts only. Further, as Cohen's complaint makes no claims as to the principal profit sharing account, the record before us may not reflect the losses incurred by that account. The majority's calculation that Cohen has alleged losses of only nine and one-half per cent of the profit sharing account, *ante* at 634, therefore is based upon two improper assumptions: first, that the principal profit sharing account sustained zero losses and, second, that the initial total value of the profit sharing account, rather than the initial total value of the subaccounts, is the appropriate basis upon which to calculate the percentage of alleged losses. In addition, contrary to the majority's suggestion, *ante* at 634 n.9, the materiality of the subaccount losses is a factual question which should be determined by a jury, not by summary judgment.

managed portfolios. This is the heart of Cohen's contention that summary judgment was inappropriate. Cohen's expert indicated that neither of the subaccount portfolios could be described as growth if the principal profit sharing account was also described as growth. The dispute was never the distinction between growth and "safe growth," but the fact that Cohen learned from his expert that the subaccounts were three and four times, respectively, more risky than his principal profit sharing account.

The breach of fiduciary duty claims should not have been disposed of by summary judgment.

> "Where compliance with a statute of limitations is at issue, 'factual disputes concerning when a plaintiff knew or should have known of his cause(s) of action are to be resolved by the jury.' To avail himself of the protection of G. L. c. 260, § 12, therefore [the plaintiff] must set forth facts from which a jury reasonably could find that a fiduciary relationship existed between himself and [the defendant], and that [the defendant] breached its fiduciary duty to disclose to him adequate information that would have apprised him that his funds had been converted. '[W]here a fiduciary relationship exists, the failure adequately to disclose the facts that would give rise to knowledge of a cause of action constitutes fraudulent conduct and is equivalent to fraudulent concealment for purposes of applying [G. L. c. 260,] § 12.' "

*Patsos* v. *First Albany Corp.*, 433 Mass. at 329 (citations omitted).

2. *Breach of contract.* Cohen argues that his breach of contract claim is based on the fact that State Street made express warranties in their agreement and not on any implied warranty or negligence. To support "[a] claim for breach of express warranty . . . the plaintiff must demonstrate that the defendant promised a specific result." *Anthony's Pier Four, Inc.* v. *Crandall Dry Dock Engrs., Inc.*, 396 Mass. 818, 823 (1986). As the parties' agreement states that State Street would "invest all Plan assets subject to this Agreement in accordance with the investment objectives" and State Street acknowledges that the investment objective was growth, I agree with the majority that

Cohen's contract claim states a cause of action distinct from a breach of fiduciary duty.

I disagree, however, with the majority's conclusion that Cohen has failed to support this claim with any assertion of material fact. Cohen's expert testified that the subaccounts, which were subject to the agreement, were not growth but speculative investments. Thus, in my opinion, Cohen has supported his breach of contract claim with sufficient evidence to withstand summary judgment. As this claim is subject to a six-year statute of limitations, it was timely, see G. L. c. 260, § 2, and summary judgment was improper.

3. *Breach of covenant of good faith and fair dealing.* Finally, inexplicably, the motion judge, in his memorandum and decision, neither addresses nor specifically rules on Cohen's claim for breach of the implied covenant of good faith and fair dealing. Cohen argues that there are genuine issues of material fact whether State Street committed a breach of its implied covenant of good faith and fair dealing by making the speculative investments without a full disclosure. State Street's actions need not be "willful, intentional, or deliberate" to prove a breach of the implied covenant. *MacGillivary* v. *W. Dana Bartlett Ins. Agency of Lexington, Inc.*, 14 Mass. App. Ct. 52, 57 (1982). Cohen would not have to prove "bad faith," but only a lack of good faith, to show a breach of the implied covenant. See *Nile* v. *Nile*, 432 Mass. 390, 398-399 (2000). Therefore, summary judgment should not have been entered on this count.